## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS / ST. JOHN

HIGHLAND CREDIT OPPORTUNITIES CDO, LTD.; HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.; HIGHLAND RESTORATION CAPITAL PARTNERS MASTER, L.P. AND NEXPOINT CREDIT STRATEGIES FUND,

PLAINTIFFS,

v.

STEPHEN EVANS-FREKE,

DEFENDANT.

Case No. ST-2018-CV-00315

Action for Damages

Jury Trial Demanded

Cite as: 2021 VI Super 34

**Appearances:**

**KYLE R. WALDNER, ESQ.**
Quintairos, Prieto, Wood & Boyer, P.A.
Miami, FL 33156
*For Plaintiffs*

**RYAN M. GOLDSTEIN, ESQ.** (admitted *pro hac vice*)
**CRAIG A. BONEAU, ESQ.** (admitted *pro hac vice*)
**SCOTT D. SALDAÑA, ESQ.** (admitted *pro hac vice*)
Reid Collins & Tsai LLP
Austin, TX 78746
*For Plaintiffs*

**GORDON C. RHEA, ESQ.**
Gordon C. Rhea, P.C.
Mt. Pleasant, SC 29464
*For Defendant*

**ANDREW B. LICHTENBERG, ESQ.** (admitted *pro hac vice*)
**SCOTT A. EDELMAN, ESQ.** (admitted *pro hac vice*)
Milbank LLP
New York, NY 10001
*For Defendant*

*Highland Credit Opportunities CDO, Ltd, et al. v. Evans-Freke*
Case No. ST-2018-CV-00315
MEMORANDUM OPINION
Page 2 of 12

2021 VI Super 34

## MEMORANDUM OPINION

**WILLOCKS, Presiding Judge.**

¶1 **THIS MATTER** was referred by another judge to determine whether this case should be designated as complex under Rule 92 of the Virgin Islands Rules of Civil Procedure. The defendant, Stephen Evans-Freke (hereinafter "Defendant" or "Evans-Freke"), moved for the designation, claiming this case is presumptively complex because it concerns "investment losses involving multiple parties." V.I. R. Civ. P. 92(b)(4). The plaintiffs, Highland Credit Opportunities CDO, Ltd., Highland Credit Strategies Master Fund, L.P., Highland Restoration Capital Partners Master, L.P., and NexPoint Credit Strategies Fund (collectively "Plaintiffs"), oppose, insisting that Evans-Freke is just trying to delay. Having considered the arguments on both sides, the Court will deny the motion for the reasons given below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶2 According to the complaint, Plaintiffs are "the majority holders of $156 million in senior secured promissory notes that were due on June 15, 2012." (Compl. ¶ 1.) "Plaintiffs have not been paid a dime of the promised principal or interest payments that now total hundreds of millions of dollars." *Id.* ¶ 7. The reason why, they allege, is because Evans-Freke, along with John Mayo (hereinafter "Mayo"), who is not a party to this case, "orchestrated a highly-sophisticated international shell game referred to as a 'bleed-out' to defraud [them]." *Id.* ¶ 1. Evans-Freke and Mayo "utilized their private equity fund Celtic Pharmaceutical Holdings, L.P. (the "Fund") to sell the Notes to investors like Plaintiffs through the Fund's placement agents Morgan Stanley and HSBC Securities." *Id.* ¶ 3. "Celtic Pharma was in the pharmaceutical products business, an industry that involves additional layers of complexity in the form or patents, licenses, and sublicenses that make it difficult to identify the true beneficiaries of any products that were developed." *Id.* ¶ 2. Sometime after the notes were sold, Evans-Freke and Mayo "utilized a

complex multi-company group organized in widespread locales like the Netherlands, Bermuda, and Malta[,]" *id.* ¶ 2, intended, according to Plaintiffs, "to deplete the assets of the Celtic Pharma companies within the collateral pool that secured the Notes and funnel those assets to Celtic Pharma companies outside of the collateral pool." *Id.* ¶ 1 (footnote omitted). Plaintiffs claim they were "left holding the bag with claims for repayment against insolvent shell companies from far-flung jurisdictions around the globe." *Id.*

¶3        According to an organizational chart in the complaint, Plaintiffs allege that at least forty-nine different Celtic entities are involved. *See id.* ¶ 35. Primarily, Evans-Freke and Mayo were the principals and "were intimately involved in the marketing of the Notes and emphasized their control over the Issuer every step of the way." *Id.* ¶ 20. Plaintiffs contend that Evans-Freke and Mayo "set up multiple successor funds to pursue the exact same investment strategy as the Fund but on a larger scale[,]" *id.* ¶ 5, and "inflated management fees, fabricated expenses for . . . middleman services[,]" *id.* ¶ 6, among other "acts of self-dealing[.]" *Id.* ¶ 65.

¶4        "Plaintiffs initially filed suit in New York state court for breach of the Notes and Indenture on June 10, 2013." *Id.* ¶ 94. In addition to Mayo and Evans-Freke, they also named several Celtic entities as defendants. *See, e.g., Highland Crusader Offshore Partners, L.P. v. CelticPharma Phinco B.V.*, 2019 NY Slip Op 33458(U) (Sup. Ct.) (caption lists all parties). Plaintiffs filed a second lawsuit, also in the Supreme Court of New York, in 2016 against Mayo, Evans-Freke, and others. *See Highland Crusader Offshore Partners, L.P. v. Targeted Delivery Techs. Holdings, Ltd.*, 124 N.Y.S.3d 346, 351 (App. Div. 2020) ("Plaintiffs commenced this action in 2016, and in 2018 they filed a first amended complaint . . . ."). And on June 13, 2018, Plaintiffs filed this action in the Superior Court of the Virgin Islands, but only against Evans-Freke as a defendant. Jurisdiction is proper in the U.S. Virgin Islands, they allege, because Evans-Freke resides in St. Thomas. (*See* Compl. ¶ 15 ("Defendant resides in this division and may be

served with process within this division."). *Accord Evans-Freke v. Evans-Freke*, 70 V.I. 397, 400 (Super. Ct. 2019) ("In 2008, Husband moved to the U.S. Virgin Islands to form businesses, at which time he began renting a home here.").

¶5     Plaintiffs have sued Defendant to recover from him "as the alter ego of the Fund and Issuer . . . ." (Compl. ¶ 8.) Each Plaintiff asserts three counts against Defendant. Count I is for breach of the notes and indenture; Count II is for breach of the duty of good faith and fair dealing, and Count III is for money had and received. Summons issued on June 14, 2018. Two months later, on August 23, 2018, Plaintiffs claimed they had exhausted efforts to serve Defendant and moved for leave to serve by publication. The Court (Gumbs Carty, J.) granted the request and, on November 9, 2018, Defendant appeared through counsel and stipulated with Plaintiffs to extend his time to respond to the complaint. Approximately two weeks later, on November 26, 2018, Defendant moved for another extension of time, citing the 2016 New York action and a motion he filed in that case to dismiss for lack of personal jurisdiction and for failure to state a claim for relief. How the New York court rule, Evans-Freke explained, would impact his "strategy in this action." The Court granted Defendant's motion, over the Plaintiffs' opposition, and gave him until January 11, 2019 to answer or respond. By then, the New York state court had denied Evans-Freke's motion to dismiss. *See Highland Crusader Offshore Partners, L.P.*, 184 A.D.3d at 128 (noting order entered December 4, 2018).

¶6     On January 11, 2019, Defendant responded to Plaintiffs' complaint by moving to dismiss it as duplicative of the 2016 New York action, and also for failure to state a claim for relief. Defendant also included "Complex" on the caption of his motion. After an agreed extension, Plaintiffs opposed the motion and moved for oral argument, which the Court granted. The parties argued Defendant's motion on May 7, 2019, at the conclusion of which the Court granted Defendant's request for a 90-day discretionary stay in light of the New York action. The Court reduced its bench ruling to writing on June 6, 2019, denying

Defendant's motion to dismiss the Virgin Islands action under the first-filed rule, but granting instead a brief stay.

¶7      That same day, June 6, 2019, the Plaintiffs moved to lift the stay, claiming Defendant had misrepresented in court that the parties to the New York action could continue discovery pending appeal. According to Plaintiffs, Defendant's New York counsel moved for a stay pending appeal the day after oral argument in St. Thomas. Plaintiffs claimed Defendant's true motivation was to delay all litigation, whether in New York or the Virgin Islands. Defendant opposed the motion and the Court, on July 9, 2019, denied Plaintiffs' motion to lift the stay sooner than August 5, 2019. The Court then held a status conference with the parties on August 30, 2019, granted Plaintiffs' request to lift the stay, and ordered the parties to coordinate discovery with the New York action, and meet and confer and submit a proposed scheduling order by September 5, 2019, later extended by mutual agreement to September 20, 2019.

¶8      Only Plaintiffs submitted a proposed scheduling order, however. Defendant instead filed a renewed motion to dismiss the Virgin Islands action as duplicative of the New York action. He did not include "Complex" in the renewed motion. By Order dated October 30, 2020, the Court denied Evans-Freke's motion, "find[ing] that another stay is not warranted and that the case should continue through the discovery process until final adjudication" because "Evans-Freke is attempting to delay proceedings in both jurisdictions to avoid either court reaching the merits of Plaintiffs' claims." (Order 3, entered Nov. 2, 2020.) Evans-Freke answered the Plaintiffs' complaint on November 16, 2020. He also did not counter-designate the case as complex. *See* V.I. R. Civ. P. 10(e)(1) ("A plaintiff may designate or a defendant may counter-designate an action or proceeding as complex in the caption of its initial pleading at the earliest opportunity for that action or proceeding.") The same day as he filed his answer, Evans-Freke moved for reconsideration of the October 30, 2020 Order denying his renewed motion to dismiss, characterizing the Court's finding that he is attempting to delay both cases as "demonstrably incorrect." Plaintiffs opposed

reconsideration and the Court denied it in a December 22, 2020 Order.

¶9      Seven days later, on December 30, 2020, Evans-Freke filed a motion to have this case referred to the Complex Litigation Division to determine whether it should be treated as complex. Plaintiffs opposed. By order dated January 27, 2021, the Court (Gumbs Carty, J.) granted the request to refer the case. Nothing further relevant to Defendant's request to designate the case as complex has been filed to date except that Plaintiffs gave notice to the Court on February 12, 2012 that the New York trial court had denied Defendant's motion for an anti-suit injunction. *Cf. Gryphon Domestic VI, LLC v. APP Int'l Fin. Co. B.V.*, 791 N.Y.S.2d 869, 869 (Sup. Ct. 2004) ("The rule of comity strongly disfavors injunctions that stay ongoing proceedings before a foreign court of competent jurisdiction. To obtain an anti-suit injunction against a foreign proceeding, the applicant must clearly show that the proceeding 'was brought in bad faith, or motivated by fraud or an intent to harass the party seeking the injunction, or if its purpose was to evade the law of the domicile of the parties.'" (citations omitted)).

## II.     DISCUSSION

¶10      The Complex Litigation Division of the Superior Court exists to provide "a centralized approach" and "continuous and extensive judicial management" for all cases designated as complex. *Victor v. Hess Oil V.I. Corp.*, 69 V.I. 484, 491 (Super. Ct. 2018) ("Implicit within the establishment of a complex litigation division was the recognition of 'the need for a centralized approach' to the cases assigned to the Complex Litigation Division and a mandate that they 'receive the continuous and extensive judicial management necessary to their efficient administration.'" (quoting *In re Establishment of a Complex Litig. Div. Within the Super. Ct. of the V.I.*, Case No. ST-2018-MC-00030, 2018 V.I. LEXIS 51, *1, 3 (V.I. Super. Ct. May 11, 2018)). "Class actions,' 'securities claims or investment losses involving multiple parties,' and 'environmental tort claims, mass tort claims, or toxic tort claims commenced . . . as one action or multiple, individual actions,' are several types of cases that are presumptively complex." *Sixteen*

*Plus Corp. v. Yousef*, 72 V.I. 610, 627 (Super. Ct. 2020) (citations and ellipsis omitted). Additionally, "[a] case can be deemed complex if it 'involves a large number of parties,' or when 'coordinated discovery across multiple cases would be advantageous.'" *Id.* (brackets and citations omitted). "Cases can also be complex if they 'require specialized expertise and case processing,' or when 'issues of insurance, limits on assets and potential bankruptcy can be best addressed in coordinated proceedings.'" *Id.* citations omitted). And a single case, unrelated to any other and regardless of the number of parties, can also be complex if it "requires exceptional judicial management." *Id.* ("The Court weighs 'whether management of the case on the Complex Litigation Division docket may unreasonably delay the case, increase expense, complicate the action, or unfairly prejudice a party,' with 'whether the case[] require[s] specialized expertise and case processing by the Complex Litigation Division judge and staff for the efficient utilization of judicial resources.'" (brackets, ellipses, and citations omitted)).

¶11    Here, Evans-Freke moved to destinate this case as complex, claiming that it is presumptively complex because multiple parties sued him for investment losses. (*See* Def's Mot. for Complex Treatment 6, filed Dec. 30, 2020 ("Indeed, the case is presumptively complex under Rule 92(b)(4) as a case involving claims for 'investment losses involving multiple parties.'" (quoting V.I. R. Civ. P. 92(b(4)).) Four Plaintiffs—one company, Highland Credit Opportunities CDO, Ltd., two partnerships, Highland Credit Strategies Master Fund, L.P. and Highland Restoration Capital Partners Master, L.P., and a statutory trust, NexPoint Credit Strategies Fund, each with their principal place of business in Dallas, Texas—sued Evans-Freke for damages. Each asserts the same three claims: breach of notes and indenture (Count I), breach of the duty of good faith and fair dealing (Count II), and money had and received (Count III). The events that, allegedly, gave rise to this action is a "highly-sophisticated international shell game referred to as a 'bleed out' to defraud Plaintiffs, the majority holders of $156 million in senior promissory notes . . . ." (Compl. ¶ 1.) Assuming, *arguendo*, that Rule 92(b)(4) "contemplate[s] shareholder lawsuits

or losses from investments in stocks, bonds, or other large-scale investments[,]" *Sixteen Plus Corp.*, 72

V.I. at 625-26, then Evans-Freke is correct: this matter is presumptively complex.

¶12     Plaintiffs oppose Defendant's motion by, first, challenging whether this case requires exceptional

judicial management, then, by attempting to refute the presumption of complexity, and, lastly, by claiming

that Evans-Freke is really just trying to stall. Having considered Plaintiffs' arguments, the Court rejects

their first and second points. Taking their second point first, the international shell game Plaintiffs allege

concerns large-scale investment losses, approximately $156 million. Clearly, the Plaintiffs' claims are the

type of investment losses by multiple parties that Rule 92 contemplates. As the judge assigned to this case

acknowledged during the May 7, 2019 hearing, this case "seems to be very complex in terms of the

parties," (Hr'g Tr. 22:24-25 (May 7, 2019)), involving approximately "50 separate subsidiaries and

companies." *Id.* at 22:16-17. Plaintiffs, themselves, describe this case as a "highly-sophisticated

international shell game." So, the Court rejects Plaintiffs' second point.

¶13     Regarding their first point, Plaintiffs may be correct that this case—at least until now—has not

"require[d] exceptional judicial management to avoid placing unnecessary burdens on the court or the

litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the

court, the parties, and counsel." V.I. R. Civ. P. 92(a). But the concerns embodied by Rule 92 go to the life

of a case and its potential for requiring exceptional judicial management. Every complex case starts out

simple. The question is whether, over time, the court will be burdened by the complexity of a given case

(or series of cases) and whether that burden is unnecessary in light of the other cases on the judge's docket.

General jurisdiction judges in the Superior Court of the Virgin Islands preside over both felony and

misdemeanor criminal prosecutions, non-complex civil actions and proceedings, as well as appeals from

the Magistrate Division and from various boards, agencies, and departments of the Government of the

Virgin Islands. Rule 92 asks whether one case might consume a disproportionate amount of the court's

time, resulting in delay to that one case or to the other cases on the court' docket. *Cf. Abraham v. St. Croix Renaissance Grp., LLLP*, Case No. SX-2011-CV-550, *et seq.*, 2020 V.I. LEXIS 60, *6 (V.I. Super. Ct. Apr. 13, 2020) ("[W]wen a case becomes too complicated, it only results in delay."). That is not to say that, just because a case is complicated, the parties, or even the assigned judge, can reroute the case over to the Complex Litigation Division for all further proceedings. Complicated does not necessarily mean complex. Again, while at this juncture this case may not require exceptional judicial management, the Court agrees with the judge assigned to this case that it may be "very complex . . . even in the future . . . ." (Hr'g Tr.22:24-25.) *See also* V.I. R. Civ. P. 92(e) (discretion to refer a case for complex determination "[a] t any time during the pendency of an action . . . .").

¶14     However, it is Plaintiffs' third point that does gives the Court pause. Plaintiffs contend that "transfer to the Complex Litigation Division at this late stage—with discovery almost complete and a trial only months away—would . . . 'only cause more delay and confusion.'" (Pls' Resp. in Opp'n to Def.'s Mot for Complex Treatment 6, filed Jan. 19, 2021.) Further, designating this case as complex, Plaintiffs argue, "would, in effect, reward Defendant for his dilatory tactics and refusal to engage on the merits of Plaintiffs' claims, while prejudicing Plaintiffs." *Id.* at 5. Plaintiffs' third point calls into question the timeliness of Defendant's motion.

¶15     There are two ways to designate a case complex. Either the plaintiff designates his initial pleading as complex, *see* V.I. R. Civ. P. 10(e)(1), or the defendant counter-designates her responsive pleading as complex, *see id.*, or "the judge to whom . . . [a matter] is assigned . . . request[s] that the Complex Litigation Division judge consider whether the matter should be treated as complex." V.I. R. Civ. P. 92(e)(1). Referral by the assigned judge or self-designation by the parties are the two ways in which a case is designated complex. Referral by the assigned judge does not have a time limit. *See id.* ("*At any time during the pendency* of an action that has not been initially determined to be complex, the judge to whom it is

assigned may request that the Complex Litigation Division judge consider whether the matter should be treated as complex." (emphasis added)). The reason why was given above – the potential for unnecessary burden to the parties and the court, resulting in increased costs and delay, including delay in other cases. Self-designation does have a time limit, however. The parties must specify complex in their "initial pleading *at the earliest opportunity* for that action or proceeding." V.I. R. Civ. P. 10(e)(1).

¶16     Evans-Freke appears to have attempted to comply with this rule. He designated his January 11, 2019 motion as complex. Motions are not pleadings, however. *See* V.I. R. Civ. P. 7(a) (defining pleadings). *Accord Filtrator Apparatus Co. v. Food Enters., Inc.*, 491 F. Supp. 566, 568 (D.N.J. 1980) ("[I]t is well settled that a motion is not a pleading . . . ." (citations omitted)); *Bennett v. Spaight*, 277 S.W.3d 182, 187 (Ark. 2008) ("We have held that a motion is not a pleading and have suggested that the term 'pleadings,' as used in Ark. R. Civ. P. 12, encompasses only the complaint and answer and any counterclaim and answer."); *Charney v. Charney*, 356 P.3d 355, 360 n.2 (Idaho 2015) ("A motion is not a pleading."); *Stanton v. City of Des Moines*, 420 N.W.2d 480, 482 (Iowa 1988) ("Motions and special appearances are not pleadings."). Nevertheless, Evans-Freke did include "complex" on his motion at his earliest opportunity, and the Court (Gumbs Carty, J.) acknowledged it during oral argument. Plaintiffs did not object and arguably could have assented to designating the case as complex. (*See* Hr'g Tr. 21:12-20 ("THE COURT: Having read through everything, I noticed that you had filed, you filed for it to be placed on the complex litigation docket, and I didn't see where the plaintiffs objected or anything to the sort. Attorney Waldner, you want to address that issue? ATTORNEY WALDNER: No, we didn't originally object." (line break omitted)); *see also id.* at 26:7-11 ("[ATTORNEY BONEAU:] So, to the extent that the Court decides to designate the case as complex that, you know, there shouldn't be a concern. That would alleviate some of the arguments that were made by the defendant.")

¶17     However, at the conclusion of the May 7, 2019 hearing, the Court (Gumbs Carty, J.) granted

*Highland Credit Opportunities CDO, Ltd, et al. v. Evans-Freke*
Case No. ST-2018-CV-00315
**MEMORANDUM OPINION**
Page 11 of 12

2021 VI Super 34

Evans-Freke's January 11, 2019 motion as to the request for a stay. When Evans-Freke renewed his motion to stay or dismiss on September 20, 2019, he omitted the complex designation. Similarly, when Evans-Freke moved for reconsideration of the denial of that motion, he omitted "complex" from the caption of the November 16, 2020 motion for reconsideration, even though he peppered that motion with arguments about the complexity of this case. Finally, when he filed his answer, his initial pleading, he did not counter-designate this case as complex. (*See generally* Ans., filed Nov. 16, 2020.) Instead, on December 20, 2020, a week after his motion for reconsideration was denied, Evans-Freke filed the motion now before the Court to have this case designated as complex.

¶18    Rather than designate his renewed motion and his reconsideration motion as complex (like his initial motion to dismiss), and instead of counter-designating his answer as complex, or even moving for leave to amend his answer to do so, Evans-Freke instead filed a stand-alone motion to have this case designated as complex and transferred to another division, and thus reassigned to another judge, after the judge currently assigned twice ruled against him and refused to stay the case further. Assuming, *arguendo*, that Rule 92(e) implies a right to move for complex treatment, despite the option to self-designate a case as complex and have it "forwarded as soon as practically possible to the Complex Litigation Division judge for a determination," V.I. R. Civ. P. 92(d), the Court finds, in this instance, that Evans-Freke's motion was untimely and would, effectively, delay this matter further if granted. As Plaintiffs point out, no judge has been assigned to the Complex Litigation Division following the departure of the prior judge. "Assigning this action to a division without a judge—when the [current judge] has, to date, effectively managed the case and set it for trial—will only cause unreasonable delay and increase the burden on the judicial system and on the parties." (Pls.' Opp'n 5.) Under these circumstances, the Court agrees with Plaintiffs that Defendant's motion should be denied.

*Highland Credit Opportunities CDO, Ltd, et al. v. Evans-Freke*
Case No. ST-2018-CV-00315
MEMORANDUM OPINION
Page 12 of 12

2021 VI Super 34

## III.    CONCLUSION

¶19    For the reasons stated above, the Court concludes that Defendant's motion for complex treatment should be denied. Although this matter may be presumptively complex, and even though it could, at some point down the road, require significant judicial resources, the Court finds that Evans-Freke did not act timely in seeking to have this case designated complex and, further, that designating this case as complex now, when there is no judge assigned exclusively to the Complex Litigation Division at this moment, would be tantamount to staying the case. The judge currently assigned retains the discretion to refer this matter again if warranted. *See* V.I. R. Civ. P. 92(e)(1). However, at this juncture, the Court must deny Defendant's motion for complex treatment. An appropriate order follows.

DONE this __12th__ day of March, 2021.

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**

ATTEST:
TAMARA CHARLES
Clerk of the Court
By: _____
Court Clerk
Dated:    3/17/2021

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS / ST. JOHN

| | |
|---|---|
| HIGHLAND CREDIT OPPORTUNITIES CDO, LTD.; HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P.; HIGHLAND RESTORATION CAPITAL PARTNERS MASTER, L.P. AND NEXPOINT CREDIT STRATEGIES FUND, <br><br> PLAINTIFFS, <br><br> v. <br><br> STEPHEN EVANS-FREKE, <br><br> DEFENDANT. | Case No. ST-2018-CV-00315 <br><br> Action for Damages <br><br> Jury Trial Demanded |

## ORDER

AND NOW, for the reasons stated in the accompanying Memorandum Opinion dated March 17, 2021, it is hereby **ORDERED** that the Motion for Complex Treatment filed by Defendant Stephan Evans-Freke on December 30, 2020 is **DENIED**. This matter remains assigned to the docket of the Honorable Renee Gumbs Carty.

**DONE and so ORDERED** this  17th  day of March, 2021.

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**

ATTEST:
TAMARA CHARLES
Clerk of the Court
By:
Court Clerk II
Dated: 3/17/2021